IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY E. PETKEVICH,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | No. C 12-2352 SI<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND REMANDING ACTION** |

The parties have filed cross-motions for summary judgment in this Social Security appeal. Based upon the Court's review of the parties' papers and the administrative record, the Court hereby GRANTS IN PART plaintiff's motion for summary judgment; DENIES defendant's motion for summary judgment; and remands to the Social Security Administration for further proceedings.

**BACKGROUND**

**I.    Factual Background**

Plaintiff's disability claim is based on injuries plaintiff sustained in an automobile accident on November 29, 2007. Administrative Record ("AR") 42. Prior to her accident, plaintiff was at various times employed as a personal chef, cook, house manager, newborn-care nurse, and caterer. AR 20, 44–45. Plaintiff applied for social security disability benefits for the period from December 3, 2007, when she first sought treatment, through December 31, 2009, the last day she was eligible for disability insurance based on the quarters of coverage she earned. AR 20.

1 Plaintiff claims to experience chronic pain in her left hand and thumb, her back and left leg, and
2 her neck. AR 20, 59–63. She also alleges pain and injury to her right hand, although the record is
3 unclear on when her right hand became a problem. *See* Pl.'s Motion at 3, 9–10. In the hearing before
4 an administrative law judge ("ALJ"), plaintiff testified that her pain prevents her from pushing, pulling,
5 or grasping even light objects with any regularity. AR 53–59. She has seen several doctors for
6 treatment: Edward Katz, an orthopedic surgeon who was plaintiff's primary medical provider; Duc
7 Nguyen, an orthopedic surgeon who took over for Dr. Katz when he retired soon after plaintiff's injury;
8 and Vincent Hentz, a hand surgeon. Pl.'s Motion at 4–5; AR 26. She has been evaluated by several
9 other doctors: Calvin Pon, an internist assigned by the state social security agency; Jeffrey Holmes, an
10 agreed-upon medical evaluator for plaintiff's workers compensation claim; and Lakshmi Neena
11 Madireddi, a physiatrist that plaintiff sought out in connection with her social security disability claim.
12 AR 25–26, 28. The ALJ considered each of these doctors' evaluations when adjudicating plaintiff's
13 disability claim, except for Dr. Katz's opinion.[1] *Id.*

14 The parties focus on three of the doctors' opinions: Dr. Nguyen, Dr. Hentz, and Dr. Pon.[2]
15 Plaintiff saw Dr. Nguyen multiple times for treatment and assessment of her neck, back, and hands
16 between March 2008 and July 2010. The ALJ relied on a Spinal Impairment Questionnaire from April
17 27, 2009 for Dr. Nguyen's opinion. AR 26; *see also* AR 500 (Ex. 20F). On the questionnaire, Dr.
18 Nguyen diagnosed plaintiff with herniated cervical disc, sprained wrist, degenerative lumbar disk, and
19 arthritis in her left hand. AR 500. He found that plaintiff had a limited range of motion of forty degrees
20 cervical and fifty degrees lumbar, and that she had tenderness of the left trapezius muscle. *Id.* He did
21 not identify what laboratory or diagnostic test results supported his findings. *Id.* Dr. Nguyen indicated
22 that plaintiff could, in an eight-hour day, sit one hour and stand or walk for two hours, but she must rise
23 to move around for five minutes every fifteen minutes. AR 503. He marked that plaintiff could
24 frequently lift or carry up to five pounds, occasionally lift five to twenty pounds, and never lift twenty
25 or more pounds. AR 503–04. He indicated that plaintiff's "experience of pain or other symptoms" was

---

[1] Dr. Nguyen took over as plaintiff's doctor when Dr. Katz retired. Plaintiff does not contend that it was an error for the ALJ not to consider Dr. Katz's opinion.

[2] The ALJ discussed and relied on other doctor's opinions as well, but plaintiff does not assert that the ALJ's treatment of the other doctors' opinions was erroneous.

1  severe enough to frequently interfere with her attention and concentration. AR 504. And he marked
2  that she was "incapable of even 'low stress'" in a work environment, but did not give a basis for this
3  conclusion. AR 505. He also answered "yes" that plaintiff's "impairments [were] likely to produce
4  'good days' and 'bad days,'" resulting in her absence from work "[m]ore than three times a month."
5  *Id.* Finally, he indicated that plaintiff could not push, pull, or stoop, and needed to avoid temperature
6  extremes and heights. AR 506.

7  Dr. Hentz began treating plaintiff for problems with her hands and wrists in March of 2009. AR
8  582. He performed surgery on her right wrist in September 2009. AR 295. Dr. Hentz completed a
9  "Multiple Impairment Questionnaire," which the ALJ relied on for his opinion, on August 27, 2009.
10 AR 582–89. Dr. Hentz diagnosed plaintiff with carpal tunnel syndrome and osteoarthritis, indicating
11 that her prognosis was "good, post surgery," but not specifying whether his prognosis was for her right
12 hand, on which he performed surgery, her left, or both.[3] AR 582. He wrote that plaintiff suffered from
13 "sharp," "constant" pain in both hands, marking her estimated pain level as an eight out of ten. AR
14 583–84. Dr. Hentz indicated that plaintiff could lift or carry up to five pounds frequently, five to ten
15 pounds occasionally, and never lift or carry ten or more pounds. AR 585. He also marked that plaintiff
16 was limited in "repetitive reaching, handling, fingering, or lifting," because she experienced "pain with
17 those movements." *Id.* He marked that plaintiff would experience "marked" limitation in her right hand
18 when "[g]rasping, turning, twisting objects[,] . . . [u]sing fingers/hands for fine manipulations[,] . . .
19 [and] [u]sing arms for reaching (including overhead)," and "moderate" limitation for the same in her
20 left hand. AR 585–86. He indicated that plaintiff's pain or symptoms would frequently interfere with
21 her attention and concentration, but he did not expect her impairments to last at least twelve months.
22 AR 587. Dr. Hentz also indicated that plaintiff would have good and bad days, and would likely be

---

[3] Dr. Hentz consulted plaintiff on her left and right hands, but only performed surgery on her right hand. *See* AR 511–13 (Progress Note Report by Dr. Hentz, Mar. 23, 2009); AR 703–04 (Description of right hand operation, Sept. 18. 2009). The record, including his opinion in the Multiple Impairment Questionnaire and his notes elsewhere, is unclear as to his opinion regarding plaintiff's left hand and whether his answers on the Questionnaire reflected impairment in both hands. *See* AR 582; AR 511–13 (Progress Note Report by Dr. Hentz, Mar. 23, 2009); AR 664–65 (Results: Surgical Procedure on plaintiff's right hand, Sept. 9, 2009); AR 680–83 (Progress Note Report by Dr. Hentz, Nov. 29, 2009).

3

absent from work more than three times a month. AR 588. Finally, he indicated that plaintiff should not push or pull. *Id.*

Dr. Pon evaluated plaintiff on October 20, 2008 at the request of the state Social Security Administration—Department of Social Services—Disability Evaluation Division. AR 423. He physically examined plaintiff and referenced the findings of previously-taken MRIs. AR 423, 425. His "Diagnostic Impression" was that plaintiff suffered from "[c]hronic neck pain," caused by "possible cervical disk disease and/or degenerative changes of the cervical spine"; "chronic residual left thumb pain" from the left thumb fracture she experienced in the 2007 automobile accident; and "[c]hronic mid and low back pain," which was probably "lumbar disk disease." AR 425. He noted that for her neck pain "there is no hard objective evidence of a cervical nerve root impingement." *Id.* Based on his exam, Dr. Pon found that plaintiff could "stand and/or walk for a total of 4 to 6 hours during an 8 hour workday. . . . [And] sit for a total of 6 hours during an 8 hour workday." *Id.* He wrote that she was limited to only occasionally stooping, crouching, kneeling, squatting, crawling, or climbing stairs or ladders. *Id.* He remarked that plaintiff should not be limited in pushing and pulling on the right side, and on the left side, she could push, pull, and use her hand for control "on an occasional to frequent basis depending on the level of her symptoms." *Id.* He found that she should be able to lift and carry ten pounds frequently and twenty pounds occasionally. *Id.* Finally, he found that plaintiff had no limitation in performing "gross and fine manipulative tasks" in either hand, although she might experience symptomatic limitations in the left hand. *Id.*

## II. Procedural Background

Plaintiff applied for disability benefits under the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d), on August 5, 2008. AR 20. Plaintiff's initial application for benefits was denied on December 9, 2008, and denied upon reconsideration on December 31, 2008. *Id.* Plaintiff requested a hearing to challenge the decision, which took place on February 10, 2010. *Id.* An ALJ heard testimony from plaintiff and from a vocational expert ("VE"). AR 36–78. The ALJ issued a decision on April 30, 2010 finding that plaintiff was not entitled to benefits because she had sufficient Residual Functioning Capacity ("RFC") to perform several of her previous positions. AR 30. Plaintiff appealed that decision

to the Appeals Council, and the Council upheld the ALJ's decision on March 8, 2012. Complaint ¶ 7, 8. Plaintiff then filed this action for review under 42 U.S.C. § 405(g).

In evaluating plaintiff's claim, the ALJ followed the five-step sequential evaluation process required by 20 C.F.R. § 404.1520(a). First, the ALJ found that plaintiff did not have Substantial Gainful Activity during the alleged period of disability. AR 22; *see* 20 C.F.R. § 1520(b). Second, the ALJ found that plaintiff had severe impairments that caused more than minimal functional limitations. AR 22; *see* § 1520(c). Third, the ALJ found that plaintiff's impairments did not meet or equal the impairments listed in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526, which would have automatically resulted in a finding of disability. AR 22–23.

Fourth, the ALJ determined plaintiff's residual functioning capacity ("RFC"), and based on her finding, determined that plaintiff was able to perform her past relevant work. AR 21–22; *see* 20 C.F.R. § 404.1520(f). In doing so, the ALJ considered first the evidence of medical or mental impairments that could produce plaintiff's claimed pain or symptoms. AR 24. The ALJ then evaluated the limiting effect of the pain or symptoms on plaintiff's functioning. *Id.* The ALJ found that plaintiff's medically determinable impairments could cause her symptoms, but found plaintiff's statements about the severity, intensity, and limiting effect of her symptoms to be not credible because they were contradicted by objective evidence. *Id.*

To support her RFC finding, the ALJ explained on which doctors' opinions she relied, and to which she gave less weight. AR 27–28. The ALJ relied most on the opinion of Dr. Calvin Pon, but did not supply her reasoning for giving significant weight to Dr. Pon's opinion. AR 27. Similarly, the ALJ gave significant weight to the state agency's consultants, A. Dipsia, M.D. and H. Pham, M.D., who determined that plaintiff had the RFC to perform light work. *Id.*; *see* AR 428–32 (Ex. 11F, Physical Residual Function Capacity Assessment by A. Dipsia, Nov. 2, 2008); AR 444–46 (Ex. 13F, Case Analysis by A. Dipsia, Dec. 9, 2008); AR 447–50 (Ex. 15F, Case Analysis by H. Pham, Jan. 9, 2009).

The ALJ gave little weight to the opinions of Drs. Holmes, Nguyen, and Madireddi, and "various weights" to Dr. Hentz's opinion. AR 27–28. She gave little weight to Dr. Holmes' opinion because it did not "identify any work-related functional limitations." AR 27. The ALJ gave "little weight" to Dr. Nguyen's opinion because she concluded it was "not supported by the objective record and [was] not

5

based on the clinical and laboratory findings in his treatment notes" and was "not consistent with other substantial evidence in the record," including the findings of Dr. Pon.  AR 27–28.  The ALJ also discounted Dr. Nguyen's opinion because of "Dr. Nguyen's own findings of 'good prognosis,' claimant's 'occasional' pain and no prescribed medications."  AR 27–28.  The ALJ gave little weight to the opinion of Dr. Madireddi because she had no treating relationship with plaintiff, plaintiff saw her only to help secure social security benefits, and her conclusions were based on plaintiff's subjective statements.  *Id.*  Finally, the ALJ gave "significant weight" to Dr. Hentz's "good" prognosis after plaintiff had surgery on her right hand, because she found it to comport with the post-operative x-rays and symptoms.  AR 28.  But she gave "little weight" to Dr. Hentz's opinion regarding plaintiff's pain level, formed before a planned surgery on plaintiff's right hand, because it "appear[ed] to have been based solely on [plaintiff's] subjective statements" and Dr. Hentz did not prescribe or indicate any pain medications.  *Id.*

The ALJ also gave little weight to plaintiff's subjective testimony, finding her statements to be exaggerated and contradictory to the objective evidence.  *Id.*  She noted that plaintiff's daily activities seemed inconsistent with the high pain levels plaintiff described, and reasoned that her pain claims were inconsistent with the good prognosis and moderate pain medications plaintiff's treating doctors had consistently given her.  *Id.*

Based on her weighing of the evidence, the ALJ concluded that plaintiff possessed the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b).  AR 23.  The ALJ specified that plaintiff would be limited to lift and carry five pounds frequently, ten pounds occasionally, and twenty pounds rarely; to stand and walk for a total of four to six hours and sit for six in an eight-hour work day; to only occasionally climb ladders and stairs, stoop, kneel, crouch, crawl, or squat; and to only occasionally push and pull with the left hand, leg, and foot.  *Id.*  Furthermore, the ALJ found that plaintiff would have good and bad days, and on the bad days her ability to push and pull on the left side might be more limited.  *Id.*  The ALJ did not explain how she arrived at the lift and carry limitations, which do not match any of the specific medical opinions she cited.  *See* AR 27.  Based on the VE's testimony, the ALJ found that plaintiff's RFC enabled her to perform past relevant work as a personal chef, household

6

1 manager, and caterer. AR 29.  Accordingly, the ALJ found that plaintiff was not under a disability as
2 defined by the Social Security Act for the relevant period, and denied her benefits. *Id.*

**STANDARD OF REVIEW**

A district court's review of a disability determination is limited, and a final administrative decision may be altered only if it is not supported by substantial evidence or if it is based on legal error. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005) (citation and internal quotation omitted). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  Even if substantial evidence supports the ALJ's factual findings, the decision must be set aside if improper legal standards were applied in reaching that decision. *See Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002).

**DISCUSSION**

Plaintiff seeks summary judgment based on three arguments.  First, plaintiff argues that the ALJ improperly rejected the opinions of treating doctors Nguyen and Hentz, and instead relied on that of a non-treating doctor, Dr. Pon.  Second, plaintiff argues that the ALJ's determination of plaintiff's RFC did not represent plaintiff's true capacity to work on a sustained basis because the ALJ failed to quantify how many days plaintiff would be further limited due to her "bad days."  Finally, plaintiff argues that the vocational expert used an incorrect definition of light work, which the ALJ failed to address, undermining the ALJ's finding that plaintiff could perform light work.

**I.   Improperly Rejecting Medical Evidence**

Plaintiff first argues that the ALJ unjustifiably rejected the opinions of treating physicians Nguyen and Hentz.  It is the ALJ's role to determine credibility and resolve the conflict between conflicting medical opinions. *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The ALJ may discredit conclusory or brief opinions, and those that are unsupported by the record as a whole or by objective medical findings. *Id.*  An ALJ cannot ignore or reject the judgment of a treating physician, even when that judgment is controverted by another physician, without "'specific and legitimate'

7

reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 831 n.8 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(d)(2). An ALJ may "meet his burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted). However, a bare recitation of the types of medical test results that have come up negative is not substantial evidence sufficient to reject the judgment of a treating physician. *See Embry v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). Rather, "[t]he Commissioner is required to give weight not only to the treating physician's clinical findings and interpretation of test results, but also to his subjective findings." *Lester*, 81 F.3d at 832-33. When considering those findings, "[t]he ALJ is responsible for determining credibility." *Magallanes*, 881 F.2d at 750. Importantly, however, "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester*, 81 F.3d at 832.

### A.     Opinion of Dr. Nguyen

Plaintiff attacks the ALJ's conclusion that Dr. Nguyen's opinion was "not supported by the objective record and [was] not based on the clinical and laboratory findings in his treatment notes," and was inconsistent "with other substantial evidence in the record." AR 27–28. Plaintiff argues that Dr. Nguyen's conclusions, though not fully explained in his April 27, 2009 Spinal Impairment Questionnaire, are supported by other parts of the record. In addition, plaintiff argues that Dr. Nguyen's assessments are due greater deference because he is her treating physician, and therefore it was an error to discredit Dr. Nguyen's opinion because it conflicted with non-treating physician Dr. Pon's opinion.

#### 1.     Not Supported by Objective Record and Not Based on Clinical and Laboratory Findings

The ALJ stated that Dr. Nguyen's opinion was given little weight because "it is not supported by the objective record and is not based on the clinical and laboratory findings in his treatment notes," citing to Exhibits 8F and 21F (notes from many of Dr. Nguyen's examinations). AR 398–422, 507–80. Plaintiff argues that Dr. Nguyen's opinion is supported by the results of X-rays of her cervical spine and left hand; an MRI of her cervical spine; trigger-point tenderness in her left trapezius muscle and

8

1 shoulder girdles; tenderness on the radial and ulnar sides of the metacarpal joint of her left thumb; a
2 finding that plaintiff's "pain may be permanent"; and a finding of continued left hand pain at a level of
3 four out of ten.[4] Defendant responds that the ALJ's finding is supported by the fact that Dr. Nguyen
4 only listed physical therapy as a treatment, despite his indication that plaintiff was significantly limited
5 in her ability to stand or walk.

6 The Court concludes that the ALJ failed to provide an explanation of what evidence in the
7 "objective record" conflicted with Dr. Nguyen's opinion. It was not enough to state that Dr. Nguyen's
8 opinion is not supported; the ALJ must explain what evidence in the objective record conflicts with Dr.
9 Nguyen's opinion. *See* AR 27–28. The ALJ did not supply any reason, and certainly not the reason
10 that defendant relies on in the motion papers — that the limitations are inconsistent with a treatment
11 of physical therapy alone. Even if she had, the ALJ would have needed to address the fact that there
12 is evidence that plaintiff had multiple treatments, other than physical therapy, and prescriptions for pain
13 medication even if those other treatments and pain medications were not listed in Dr. Nguyen's April
14 27, 2009 Spinal Impairment Questionnaire. *See, e.g.*, AR 604–05, 609 (Rx Order Forms for GKL
15 Transdermals); AR 406 (Exam notes, Mar. 28, 2008) ("RTC in 2 weeks after the injection."); AR 519
16 (Exam notes, Feb. 5, 2009) ("I believe Ms. Petkevich benefits from Liboderm patch.").

### 2.    Inconsistent with the Record: Good Prognosis and Occasional pain

19 The ALJ also concluded that Dr. Nguyen's opinion regarding plaintiff's limitations was
20 inconsistent with other components of Dr. Nguyen's opinion. AR 28. In the prognosis field, Dr.
21 Nguyen wrote "good," and in response to "the nature of the pain," he wrote "moderate neck pain[,]
22 moderate back pain." AR 500, 502. He listed the "frequency of the pain" as "occasional." *Id.* The ALJ
23 found those opinions contradictory to Dr. Nguyen's answers — that he had been unable to completely

---

[4] Dr. Nguyen's notes on the continued pain of four out of ten do not specify which of plaintiff's hands he is referring to, but later in the notes he remarks that plaintiff would benefit from an operation for the left hand. *See* AR 508–09. Plaintiff's argument is weakened by its reliance on Dr. Nguyen's finding that plaintiff's "pain may be permanent," since that finding was made over a year before the questionnaire, *see* AR 411 (exam notes of April 21, 2008); and its reliance on Dr. Nguyen's indication that plaintiff's pain level was a four out of ten, since this was not a diagnosis or "finding," as plaintiff puts it, but a "subjective complaint" mentioned in Dr. Nguyen's notes. *See, e.g.*, AR 405 (exam notes of Mar. 28, 2008).

9

1 relieve plaintiff's pain with medication and that plaintiff's was highly limited in sitting, standing,
2 walking, stress, attention and concentration, and absence from work. AR 503–05.

3 It is not clear, however, what Dr. Nguyen meant by his "good" prognosis, or whether plaintiff
4 experienced "occasional pain" only as long as she maintained the physical and postural limitations he
5 indicated, i.e., not sitting or standing for too long or pushing and pulling on the left side. Nothing in Dr.
6 Nguyen's opinion suggests that he is describing a life with no working limitations. Furthermore, Dr.
7 Nguyen's findings regarding plaintiff's limitations appear consistent with his exam notes. Dr. Nguyen
8 consistently diagnosed plaintiff with "Degen[erative] intervert. disc, lumbar," and "Sprains/strains wrist
9 & hand, metacarpophalangeal." *See, e.g.*, AR 408, 411, 515. And although he remarked that surgery
10 was not needed for her neck or back, AR 408, he continued to indicate that plaintiff could not return to
11 work because of her disability, AR 404, 411, 509, 515, 519 (noting that plaintiff remains "ttd," standing
12 for temporary total disability). Finally, Dr. Nguyen's notes show that he was only waiting for plaintiff
13 to have or decline wrist surgery to declare her impairments "permanent and stationary," or not capable
14 of further medical improvement.[5] Given the uncertainty about Dr. Nguyen's "good" prognosis and
15 "occasional pain," the ALJ needed to provide more support for her finding considering Dr. Nguyen's
16 treatment records.

17

18 **3.     No prescribed medications**

19 In further support of her conclusion that Dr. Nguyen's opinion was inconsistent with other
20 substantial evidence in the record, the ALJ offered the fact that Dr. Nguyen did not list any medications
21 on the Spinal Impairment Questionnaire. AR 28. The ALJ found that inconsistent with Dr. Nguyen's
22 opinion that plaintiff had a limited ability to sit, stand, or walk, and needed to change positions
23 frequently. AR 28; *see* AR 503. Plaintiff argues that the ALJ's finding is incorrect, citing to references

24

25

---

26 [5] *See* AR 509 (Dr. Nguyen's exam notes, Apr. 27, 2009) (suggesting plaintiff have Dr. Hentz perform a surgical operation, but if not, "[Dr. Nguyen would] declare her condition permanent and
27 stationary."); AR 727 (Medical Legal (102) Permanent and Stationary Report, July 21, 2010) (declaring "[t]he condition reaches maximum medical improvement (permanent and stationary)."). The time
28 between those two statements is described in Dr. Holmes' summary of the medical evidence, showing how Dr. Nguyen continued to discuss declaring plaintiff permanent and stationary. AR 295–98.

10

1  of epidural injections and liboderm patches elsewhere in the record. Defendant argues that at some
2  points in time, no medications were listed for plaintiff.

3  Although Dr. Nguyen wrote "none"[6] for plaintiff's medications on the Spinal Impairment
4  Questionnaire, AR 504, his treatment notes show that he had previously prescribed various treatments
5  and that he prescribed a treatment that same day. Dr. Nguyen stated in his exam notes of March 19,
6  2009 that plaintiff "benefits from neuropathic medication for her neck and [lower back]." AR 515. He
7  prescribed two different concentrations of GKL Transdermals[7] that day, and again in April and June
8  2009. AR 604, 605, 609. On April 27, 2009, the same day he completed the Spinal Impairment
9  Questionnaire, Dr. Nguyen listed Celebrex with fifteen refills in the "Plan" section of his notes. AR
10 509. As plaintiff points out in her motion, Dr. Nguyen also referenced epidural injections, administered
11 by a Dr. Shapiro, in his exam notes of March 28, 2008, AR 406, and Liboderm patches in his exam notes
12 of February 5, 2009, AR 518. Contrary to defendant's characterization, the record suggests that plaintiff
13 was constantly prescribed some type of treatment. Although Dr. Nguyen "noted no prescription
14 medications for claimant" in the Spinal Impairment Questionnaire, the ALJ was incorrect in concluding
15 that plaintiff was not taking any medication for her pain or that Dr. Nguyen had not given her any, when
16 other parts of the record show that not to be the case. *See* AR 28.

### 4. Inconsistent with Opinion of Dr. Pon

19 The ALJ also gave Dr. Nguyen's opinion little weight because it was inconsistent with the
20 evaluation of Dr. Pon. AR 28. Plaintiff argues that the ALJ should not have given greater weight to the
21 opinion of a non-treating physician over that of a treating physician. Defendant argues that Dr. Pon's
22 opinion deserves significant weight because it is consistent with the record as a whole and with
23 plaintiff's conservative treatment. While the ALJ could have appropriately relied on Dr. Pon if the ALJ
24 found his opinion to be consistent with the evidence in the record, that does not eliminate the

---

[6] The word Dr. Nguyen wrote on the questionnaire is practically unreadable. It looks the most like the word "none," but a vertical line makes it appear as "nlone," or something else. AR 504. Presumably, the ALJ interpreted it as none, because she wrote that "Dr. Nguyen noted no prescription medications for claimant." AR 26.

[7] GKL stands for Gabapentin, Ketoprofen, Lidocaine. AR 604, 605, 609. Based on the timing, it appears that the GKL transdermal is the neuropathic medication Dr. Nguyen referred to in his notes.

11

presumption in favor of treating physicians. Furthermore, the Court cannot determine whether, as defendant argues, the improvement plaintiff would experience after surgery, suggested by Dr. Hentz, supports Dr. Pon's credibility or discredits Dr. Nguyen, absent an explanation of how the timing of plaintiff's wrist/hand surgery — which took place a few months before her benefits expired and almost two years after her accident, and was on her right hand instead of her left — fits into the ALJ's findings. Without sufficient, independent rationale for discrediting treating physician Dr. Nguyen's opinion, it was inappropriate for the ALJ to give less weight to his opinion because it was inconsistent with Dr. Pon's opinion.

Accordingly, the Court remands the matter to the ALJ to incorporate Dr. Nguyen's findings or to provide legitimate and more specific reasons for giving less weight to his opinion.

### B. Opinion of Dr. Hentz

Plaintiff also argues that it was an error for the ALJ to give "various weights" to Dr. Hentz's opinion. The ALJ found that Dr. Hentz's "good, post surgery" prognosis for the plaintiff was credible. AR 28. But she discounted Dr. Hentz's pre-operative opinion that the plaintiff had constant pain at a level of eight because it appeared to be based entirely on plaintiff's subjective statements, and no pain medication was indicated for the alleged constant pain. *Id.* The ALJ credited the former opinion because it comported with objective findings — an X-ray of her right hand taken in November 2009. *Id.* But there was no such objective basis against which to evaluate Dr. Hentz's opinion about plaintiff's pain, which the ALJ found not to be credible based on her testimony. *Id.* The ALJ's conclusion that the level of pain Dr. Hentz listed was based on plaintiff's subjective statements was a legitimate and specific reason to not rely on parts of Dr. Hentz's opinion. But the ALJ's second reason, that no prescribed medication was listed, was not legitimate for the same reason that it failed for Dr. Nguyen: There is ample evidence in the record of pain treatments.

In addition, the Court finds it ambiguous how the ALJ's RFC finding is affected by the timing of plaintiff's right wrist/hand carpal tunnel release operation on September 17, 2009, twenty-two months after plaintiff's injury in the car accident, and by Dr. Hentz's pre-surgery prognosis from the Questionnaire and his post-surgery evaluation of plaintiff's condition. *See* AR 295, 664. On remand,

the ALJ should explain how plaintiff's condition at various times over the alleged period of disability affects her RFC, in particular the different impairments to her right and left wrists and hands.

## II.   Residual Functioning Capacity

Plaintiff next argues that the ALJ's finding of residual capacity is "impermissibly imprecise," and therefore cannot support a determination of her ordinary capabilities. In particular, plaintiff argues that the ALJ's finding that plaintiff would have "good and bad days, and on bad days, [plaintiff's] performance of pushing and pulling on the left side might be further restricted" was not sufficient as an RFC because the ALJ did not quantify how many "bad days" plaintiff would have. *See* AR 23 (internal quotation marks omitted). RFC is "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." SSR 96-8P, 1996 WL 374184 (July 2, 1996). "RFC is not the least an individual can do despite his or her limitations, but the most." *Id.*

The Court has not found, and the parties have not pointed to, any authority on whether a qualification to an RFC finding, such as noting that the claimant would have "good and bad days," is permissible. Nonetheless, the Court finds that the ALJ's conclusion that plaintiff would have some "bad days" is not specific enough for the VE to accurately determine whether plaintiff's reduced capacity on those days, and the number of such days that can be expected, would impact her ability to maintain employment.

The Court also finds it uncertain whether the good and bad day limitation was clearly presented to the VE in the ALJ's hypothetical questions. When the ALJ asked the hypothetical corresponding to her eventual findings, she did not clearly reiterate the "good and bad days" exception. *See* AR 67–68. The VE may have understood the exception to be preserved from the previous hypothetical, but the Court cannot determine from the transcript whether the VE's testimony took that limitation into account.

The Court finds that these two questions — the quantum of "bad days" the plaintiff is expected to have and how limited plaintiff will be on those days, and whether the VE properly included the "good and bad days" limitation in the hypothetical she settled on — raise sufficient doubts about plaintiff's RFC to warrant remand on the RFC as well.

### III. Inconsistency With the Dictionary of Occupational Titles

Finally, plaintiff argues that the ALJ erred in not addressing a discrepancy between the VE's testimony and the Dictionary of Occupational Titles. The VE characterized "light work" as including lifting twenty pounds at least once a day, the capability the ALJ found plaintiff to possess. AR 71–72. The Dictionary of Occupational Titles ("DOT") defines light work as exerting up to twenty pounds of force occasionally, or up to one-third of the time. DICTIONARY OF OCCUPATION TITLES 1013 (U.S. Dept. of Labor, 4th ed. 1991); *see* 20 C.F.R. § 404.1567(b). Plaintiff argues that the ALJ failed to resolve the discrepancy between the DOT and the VE's testimony, and therefore did not make a valid determination of whether plaintiff is capable of the exertion required for her former work.

Plaintiff sees an error where there is none: the ability to lift twenty pounds rarely fits within the definition of light work, which encompasses lifting twenty pounds *up to* one-third of the time. In the DOT, light work is everything greater than sedentary work, and sedentary work means never lifting twenty pounds. Therefore, if plaintiff can lift twenty pounds even once a day, she falls into the light work category if she meets the other conditions. In his testimony, the VE attempted to clarify that the definitions worked this way, such that plaintiff's ability to rarely lift twenty pounds places her out of the sedentary category and into the light work category. *See* AR 72. Thus, as there was not an actual discrepancy between the VE's testimony and the DOT, the ALJ did not make an error in her finding.

### CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART plaintiff's motion for summary judgment, DENIES defendant's motion for summary judgment and remand this case to the agency for further proceedings.

**IT IS SO ORDERED.**

Dated: April 25, 2013

SUSAN ILLSTON
United States District Judge